J-S33039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM NARVAEZ JR. | : | |
| | : | |
| Appellant | : | No. 1620 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 9, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0004984-2022

BEFORE:  OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: OCTOBER 24, 2024**

Appellant William Narvaez Jr. appeals from the judgment of sentence imposed following his convictions for two counts of possession with intent to deliver a controlled substance (PWID) and one count of possession of drug paraphernalia.[1]  Appellant contends that the evidence was insufficient to sustain his convictions.  After review, we affirm on the basis of the trial court's opinion.

We adopt the trial court's summary of the underlying facts and procedural history of this matter.  *See* Trial Ct. Op., 3/19/24, at 1-7.[2]  Briefly, on November 4, 2022, Swatara Township Police Officer Anthony Glass conducted a traffic stop of Appellant's vehicle.  When the officer approached

---

[1] 35 P.S. § 780-113(a)(30), and (32), respectively.

[2] Although the trial court opinion is dated March 4, 2024, it was not served on the parties until March 19, 2024.

the car, he saw Appellant was holding a black bag against his body. Officer Glass asked for identification, registration, and proof of insurance, and Appellant retrieved his wallet and identification from the black bag. After Appellant gave Officer Glass consent to search the bag, the officer discovered a large quantity of what was determined to be cocaine and fentanyl in multiple bags. Appellant was arrested, and following a jury trial, he was convicted of two counts of PWID, and one count of possession of drug paraphernalia.[3] Appellant was sentenced to an aggregate term of eight to eighteen years of incarceration.

Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion in response.

On appeal, Appellant raises one issue:

Whether the evidence was insufficient to show [Appellant] possessed with the intent to deliver fentanyl and cocaine, when the Commonwealth failed to demonstrate [Appellant] had actual or constructive possession of the controlled substance?

Appellant's Brief at 5 (formatting altered).

Following our review of the record, the parties' briefs, and relevant legal authority, we affirm on the basis of the trial court's opinion. *See* Trial Ct. Op., 3/19/24, at 1-12. The trial court thoroughly addressed Appellant's claim of

---

[3] The trial court found Appellant guilty of the summary offenses of driving an unregistered vehicle in violation of 75 Pa.C.S. § 1301(a), and operating a vehicle without official certificate of inspection in violation of 75 Pa.C.S. § 4703(a).

error and correctly concluded that he was not entitled to relief. ***See id.***

Accordingly, we affirm on the basis of the trial court's opinion.[4]

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/24/2024

---

[4] The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
v. : NO. 4984 CR 2022
:
WILLIAM NAVAREZ :

## TRIAL COURT OPINION

William Navarez ("Defendant") appeals the judgment of sentence imposed following his conviction on charges of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver, (Fentanyl) [1], Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver, (Cocaine) [2], and Use /Possession of Drug Paraphernalia.[3] For the reasons set forth, the judgment of sentence should be affirmed.

## RELEVANT PROCEDURAL HISTORY

On November 4, 2022, the Commonwealth charged Defendant with: Count 1- Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver, (Fentanyl), Count 2- Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver, (Cocaine), Count 3- Use /Possession of Drug Paraphernalia, and two summary offenses, Driving an Unregistered Vehicle [4], and Operating an Unregistered Vehicle [5].

The case proceeded to a jury trial on August 14, 2023. At the conclusion of trial, the jury found Defendant guilty on Charges 1-3. On October 16, 2023, the Court imposed sentence as follows:

---

[1] 35 Pa.C.S. § 780-113§§A30
[2] 35 Pa.C.S. § 780-113§§A30
[3] 35 Pa.C.S. § 780-113 §§A 32
[4] 75 Pa.C.S. 1301 § 1301 §§A
[5] 75 Pa.C.S. 4703 §§A

Count 1- Not less than 9 nor more than 18 years incarceration in a state correctional institution, a fine of $1,000, plus the costs of these proceedings; time credit from November 4, 2022, through the date of sentencing, and standard conditions of parole.

Count 2- Not less than 2 nor more than 4 years in a state correctional institution, run concurrently with Count 1. The costs of these proceedings and a fine of $200.

Count 3- No further sentence.

Counts 4 and 5- A fine of $25 plus any applicable surcharges.

On October 16, 2023, Defendant filed a Post-Sentence Motion to Modify Sentence. On October 26, 2023, Defendant filed an Amended Post-Sentence Motion to Reconsider Sentence to which the Commonwealth filed a Response on November 7, 2023. We conducted a hearing on November 9, 2023. On that date, we amended the sentence at Count 1 to a term of incarceration of not less than 8, nor more than 18, years of incarceration in a state correctional institution.

On November 27, 2023, Defendant filed a Notice of Appeal. Pursuant to our Order to do so, on December 5, 2023, Defendant filed a Concise Statement of Matters Complained of on Appeal.

FACTUAL BACKGROUND

The facts, presented in a light most favorable to the Commonwealth as the verdict winner, are as follows:

On November 4, 2022, Officer Anthony Glass was on duty as a patrolman with Swatara Township Police Department. (Transcript of Proceedings, August 14, 2023, "N.T." p. 24; p. 27). In addition to his assignment as a patrolman, Officer Glass served as a member of the Dauphin County Crisis Response Team, SWAT Team, and the Dauphin County Special Interdiction Unit, which partners with the Dauphin County Drug Task Force. (N.T. pp. 24-25). The positions with the Crisis Response Team and Special Interdiction Unit required special training investigation of

2

and response to drug activity. (N.T. p. 26). He has also received specialized training in recognition of the signs of controlled substance impairment in individuals. (N.T. pp. 42-46). Officer Glass served as the charging officer in approximately 230 drug-related arrests including approximately one hundred for controlled substances such as heroin, fentanyl, cocaine, crack cocaine and Ecstasy. *Id.* Officer Glass has arrested approximately fifty individuals for the offense of Possession with Intent to Deliver. (N.T. pp. 26-27). He has received specialized training in recognition of signs of controlled substance impairment in individuals. (N.T. pp. 42-46).

On the evening of November 4, 2022, Officer Glass patrolled a high drug traffic area in the Eisenhower Boulevard corridor in Swatara Township, an area which included a number of hotels where drug dealing frequently occurred in the parking lots and hotel rooms. (N.T. pp. 27-28). That evening, Officer Glass drove south on Eisenhower Boulevard in a marked patrol vehicle and turned into a parking lot of the hotels. (N.T. p. 30; pp. 33-34). Officer Glass observed a gold Hyundai Sonata idling in the parking lot. *Id.* A male occupied the driver's side and a female the passenger's side. *Id.* Officer Glass drove past the vehicle, parked, and checked its registration. *Id.* Officer Glass knew of the registered owner of the vehicle, William Navarez. (N.T. p. 31). Officer Glass knew that the vehicle's registration had expired in November 2021. (N.T. pp. 30-31). Officer Glass remained in the parking lot and observed the vehicle for approximately five minutes until he saw it reverse, drive to the rear of the hotel, and pull onto Eisenhower Boulevard. (N.T. p. 32). He followed until he was in close proximity to Defendant's vehicle. (N.T. pp. 32-33). Officer Glass could see the occupants of the vehicle. (N.T. p. 33). He saw the driver reach toward the center console, shift in his seat, and glance in the rearview mirror. *Id.*

3

Based upon his experience in conducting traffic stops and investigating criminal activity, Officer Glass viewed the driver's behavior as hyper vigilant. (N.T. p. 34).

Defendant did not pull over immediately. (N.T. p. 40). Officer Glass activated his emergency lights. (N.T. p. 36). Defendant did not pull over immediately. (N.T. p. 40). A motor vehicle recording device recorded his stop of Defendant's gold Hyundai Sonata. (N.T. pp. 34-37). After he pulled over, Defendant exited the driver's side. (N.T. p. 37; p.73). Officer Glass immediately observed that Defendant held a small black bag tightly against his body, which Officer Glass found unusual. (N.T. p. 37). Officer Glass viewed Defendant's manner of holding the bag as defensive posturing, that is, taking a protective stance toward the place or item containing an illegal item. (N.T. pp. 38-39). When asked for identification, registration and insurance card, Defendant retrieved them from a compartment of the black bag. (N.T. p. 38). Because Defendant's behavior arose Officer Glass' suspicion, he patted Defendant down to make sure he did not have a weapon. (N.T. p. 39).

During his interaction with Defendant at the stop, Officer Glass did not observe any indications which he knew from his training to indicate that Defendant was impaired by a controlled substance. (N.T. 44-46). He did not observe indications such as pinpoint pupils, nodding off, slurred speech, jitteriness, pacing, or injection marks on the arms. (N.T. 44-46). Defendant spoke in a normal manner. (N.T. p. 46).

When Officer Glass asked Defendant about controlled substances, Defendant broke eye contact with him. (N.T. pp. 50). Defendant gave Officer Glass consent to search. (N.T. p. 51). In the black bag, Officer Glass found a large quantity of drugs: a white powdery substance in multiple bags, which appeared to be cocaine, and small stamped bags rubber banded together of what appeared to be heroin or fentanyl. (N.T. p. 52). The small bags appeared to Officer Glass to

4

be five bundles, which would total approximately 50 bags of heroin. (N.T. pp. 52-53). Officer Glass found an additional 3 bundles, each comprised of ten bags. (N.T. p. 53). Based upon his experience, Officer Glass knew that heroin is typically packaged for sale in a bundle, that is, bags banded together with small black rubber bands. (N.T. p. 52). In addition, he found what appeared to be approximately thirty bags in a larger bundle. (N.T. p. 53). He did not tear the bundles apart as they appeared to be fentanyl or heroin, exposure to which could be deadly. (N.T. p. 53). A fellow officer, Officer Kieselowsky, arrived to assist with the search. (N.T. p. 51; 53). Officer Kieselowsky found a straw with a beveled edge on the driver's side, which officer Glass testified would be used for scraping and separating powder. (N.T. p. 53). In addition, the officers found unused bags. (N.T. pp. 54-55).

After confiscating the drugs, Officer Glass gave Defendant Miranda warnings. (N.T. p. 71). Without prompting, Defendant told Officer Glass that the drugs in the large compartment of the black bags were heroin and cocaine. (N.T. p. 73). At the booking center, Defendant repeatedly acknowledged ownership of the bag and requested that he be charged with possession. (N.T. p. 75). Officer Glass understood Defendant's request to refer to the charge of simple possession of the drugs rather than possession with intent to deliver. *Id.* Defendant told Officer Glass that he did not use drugs. (N.T. p. 79). Officer Glass concluded that Defendant was clearly not under the influence of drugs and showed no signs of impairment. (N.T. p. 79; p. 82; p. 87). He also concluded that the quantity of drugs found was inconsistent with drug use. *Id.*

The parties stipulated to the admissibility of the report of Pennsylvania State Police forensic laboratory test results. (N.T. pp. 56-65; Commonwealth Exhibits 2-8). The laboratory report set forth these conclusions: eight baggy corners contained cocaine, a Schedule II substance. (N.T. p. 61; Commonwealth Exhibit 2, Conclusion No. 5); a larger plastic bag corner-tie, identified at

5

Item Number 1.3 of the report, contained cocaine. (N.T. pp. 61-62; Commonwealth Exhibit 3); five groups of ten packaged bags contained fentanyl. (N.T. pp. 63-64; Commonwealth Exhibit 4); sixty-nine unmarked white glassine bags contained a powder, and nine unmarked blue glassine powder bags contained 2.3 grams of powder, plus or minus 0.4 grams, of fentanyl, a Schedule II substance. (N.T. pp. 64-65); a knotted plastic corner tie bag contained 2.52 grams, plus or minus 0.01 grams of fentanyl. (N.T. pp. 66-67).

Officer Glass concluded, based upon his training and experience, that the number of bundles seized indicated possession with the intent to deliver. (N.T. p. 65). Officer Glass also concluded that the pre-packaging of the extremely potent drug fentanyl into individual stamped bags indicated individual doses intended to be supplied to a fentanyl user. (N.T. p. 67). He testified that based upon his experience with drug arrests, he did not find it unusual that Defendant did not have a gun in the car. (N.T. p. 87). Officer Glass further testified that he would not have expected to find a scale in Defendant's car in that the drugs were already packaged and because weighing fentanyl in one's car would be extremely dangerous. (N.T. p. 87; p. 91).

The Commonwealth presented the testimony of Corey Dickerson, Chief of Dauphin County Criminal Investigation. Before assuming that position, Chief Dickerson served first as a detective then a commander of the Dauphin County Drug Task Force. (N.T. p. 93). Chief Dickerson previously worked as a patrol officer assigned to the Arlington County Virginia Police Department and the federal government's Drug Enforcement Agency. *Id.* In those roles, Chief Dickerson specialized in investigations of street-level narcotics, drug trafficking and violent crimes and firearms related to drug trafficking. (N.T. p. 94). He received drug enforcement training through the Drug Enforcement Agency and has taken part in 400-450 cases per year.

6

(N.T. pp. 95-96). With no objection from the defense, the Court deemed Chief Dickerson qualified as an expert witness in the subject of street-level drug trafficking. (N.T. p. 98).

Chief Dickerson testified that he reviewed the information in the case including facts of the traffic stop, observations of Defendant's nervousness at the stop, his consent to search, the eight bags of cocaine, small bags of cocaine, and large bag. (N.T. pp. 99-100). Chief Dickerson reviewed the laboratory report of the drugs found. (N.T. p. 100). Based upon those facts, and his professional experience, he concluded that the drugs seized were packaged for distribution and that the straw was a means of filling the bags. (N.T. pp. 100-101; pp. 108-109). Chief Dickerson explained that a drug addict would not drive around with prepackaged bags of drugs. (N.T. p. 102). Rather, a drug user with a chemical need would use the drugs as soon as possible. (N.T. p. 103). He further testified that a user of heroin or fentanyl would typically have track marks, bruises and burns indicating continuous injections into the veins. (N.T. p. 110). Defendant did not have track marks. (N.T. p.130). Chief Dickerson found it significant that police did not find in Defendants vehicle typical means of drug use such as needles, spoons, a tourniquet, or cotton. (N.T. p. 114). He opined that police did not find money on Defendant because police intercepted him after the drugs were packaged but before Defendant sold them. (N.T. pp. 132-133; N.T. p. 134). Chief Dickerson also opined that police did not find a scale because bagging fentanyl or heroin in the vehicle would risk spill, absorption, and dangerous exposure. (N.T. p. 133). In sum, Detective Dickerson concluded, based upon the amounts of drugs in bags not yet broken down, the packaging of easily deliverable smaller bags, and a totality of the circumstances, the drugs seized were intended for distribution. (N.T. p. 137).

7

## DISCUSSION

A. The Commonwealth presented sufficient evidence upon which the jury could find Defendant guilty of possessing Fentanyl and Cocaine with the intent to deliver rather than for personal use. [6]

Regarding a challenge to the of sufficiency of evidence our Superior Court has reminded,

> Our review of a sufficiency claim is well settled:
> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. ... Importantly, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence. *Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa. Super. 2019) (citations & quotation marks omitted).

*Commonwealth v. Delamarter*, 2023 PA Super 161, 302 A.3d 1195, 1201 (2023).

The jury found Defendant guilty violation of the Controlled Substance, Drug, Device and Cosmetic Act, Prohibited Acts, which provides in relevant part:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> \*\*\*
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

---

[6] Defendant's Concise Statement of Matters Complained on Appeal avers that, "[t]he Commonwealth *failed to establish* that Mr. Navarez possessed the intent to deliver fentanyl and cocaine, when the evidence suggested the controlled substances were for personal use." (Defendant's Concise Statement of Matters Complained on Appeal, Issue 1)(emphasis added). We construe Defendant's claim as a challenge to the sufficiency of evidence and address it accordingly.

8

\*\*\*

(35 Pa. Stat. Ann. § 780-113(a)(30).

In order to prove the offense of Possession with Intent to Deliver a Controlled substance,

> The Commonwealth must prove beyond a reasonable doubt both that the defendant possessed the controlled substance and had the intent to deliver. *Commonwealth v. Kirkland,* 831 A.2d 607, 611, (Pa.Super.2003) (citation omitted), *appeal denied,* 577 Pa. 712, 847 A.2d 1280 (2004). When determining whether a defendant had the requisite intent to deliver, relevant factors for consideration are "the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash." *Commonwealth v. Ratsamy,* 594 Pa. 176, 183, 934 A.2d 1233, 1237–1238 (2007) (quotation omitted). Expert opinion testimony is also admissible "concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use." *Id.* The expert testimony of a witness qualified in the field of drug distribution, coupled with the presence of drug paraphernalia, is sufficient to establish intent to deliver. *Bull,* 618 A.2d at 1021.

*Com. v. Carpenter*, 2008 PA Super 186, ¶ 9, 955 A.2d 411, 414 (2008); See also, *Commonwealth v. Harper*, 611 A.2d 1211, 1217 (Pa. Super. 1992) (citation omitted). ("The intent to deliver may be inferred from an examination of all the facts and circumstances surrounding the case.")

The evidence recited above well supports the jury's conclusion that Defendant possessed the controlled substances, fentanyl, and cocaine, and that he did so with the intent to deliver. At the outset, Defendant did not dispute the laboratory identification of the seized drugs as controlled substances. Next, the lay and expert testimony established that the drugs were packaged in a manner consistent with the intent to deliver the drugs. Officer Glass and Chief Dickerson, each specially trained in investigation and prosecution of street-level drug trafficking, recognized the packaging of the drugs as typical of that employed for drug distribution rather than personal use. The jury was free to accept Chief Dickerson's explanation that a drug addict would not possess such a large quantity of drugs but instead would use them immediately because of chemical dependency.

9

Further, evidence of Defendant's appearance, conduct, and statements to Officer Glass supported the jury's conclusion that Defendant did not possess the drugs for his personal use. Defendant was not impaired when arrested and did not exhibit the physical signs of drug use. He told Officer Glass that he did not use drugs.

Based upon this evidence, the Commonwealth proved that Defendant possessed the controlled substances with the intent to deliver them.

B. <u>The Commonwealth presented sufficient evidence to prove that Defendant possessed narcotics and drug paraphernalia.</u> [7]

Ample evidence supports jury's conclusion that Defendant possessed the drugs and drug paraphernalia, namely, the straw utilized for scraping drugs and glassine bags in violation of the Controlled Substance, Drug, Device and Cosmetic Act, Prohibited Acts, which provides in relevant part:

§ 780-113. Prohibited acts; penalties

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\*\*\*

(32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

---

[7] As in our Discussion at Section A, we construe Defendant to challenge the sufficiency of evidence.

\*\*\*

(35 Pa. Stat. Ann. § 780-113 (a)(32)).

"Possession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Bowens*, 265 A.3d 730, 741 (Pa. 2021), *appeal denied*, 279 A.3d 508 (Pa. 2022) (citation omitted). *Commonwealth v. Forshey*, 299 A.3d 898 (Pa. Super. Ct. 2023), *reargument denied* (July 12, 2023), *appeal denied,* No. 203 WAL 2023, 2024 WL 240028 (Pa. Jan. 23, 2024). The Pennsylvania Supreme Court has defined constructive possession as "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." *Commonwealth v. Macolino*, 503 Pa. 201, 206, 469 A.2d 132, 134 (1983). Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access. *Commonwealth v. Murdrick*, 510 Pa. 305, 507 A.2d 1212 (1986). The Supreme Court further determined that "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances.... [and], circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Macolino, Id.* at 206, 469 A.2d at 134. (citations omitted) *Com. v. Valette*, 531 Pa. 384, 388–89, 613 A.2d 548, 550 (1992)

Here, the jury was free to conclude that Defendant's conduct at the scene and statements he made to Officer Glass proved that he possessed illegal narcotics and paraphernalia. Defendant avoided eye contact with Officer Glass and clutched a black bag close to his body when he exited his vehicle. After Office Glass read Defendant his rights, Officer Glass found drugs in the black bag. Defendant identified the types of drugs and where the officer would find them. At no time did Defendant claim that the items seized belonged to another person. Notably, Defendant asked

11

that police charge him with simple possession, in the hope of avoiding the charges of possession with the intent to deliver. These facts readily proved that Defendant was the person who possessed the drugs.

In addition, sufficient evidence existed to prove that Defendant had constructive possession of the paraphernalia. Defendant had the ability to exercise conscious domain over the illegal items in his vehicle and power to control them, and the intent to exercise control as evidenced by his furtive movements in the vehicle which Officer Glass observed before the stop and the absence of any claim that the items belonged to any other person. These facts proved that Defendant was the person in actual of constructive possession of the drug paraphernalia.

CONCLUSION

For these the judgment of sentence should be affirmed.

BY THE COURT:

WILLIAM T. TULLY,
JUDGE

March 4, 2024

Distribution:
Chuong Ly, Esq., Dauphin County Public Defender's Office
Ryan Lysaght, Esq., Dauphin County District Attorney's Office
Court Administration

12